UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at LONDON

CIVIL ACTION NO. 06-534-GWU

BARBARA A. SOUTHARD, PLAINTIFF,

VS. **MEMORANDUM OPINION**

MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

## INTRODUCTION

This is the plaintiff's second appeal of an administrative denial of applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) originally filed in 2003 (Tr. 42-4, 273-6). The applications were originally denied in a decision by an Administrative Law Judge (ALJ) dated July 15, 2004. (Tr. 11-20). After a period of reconsideration prompted by the undersigned's Memorandum Opinion, Order, and Judgment of October 19, 2005, Southard v. Barnhart, London Civil Action No. 04-623-GWU (E.D. Ky.), the case is once again before the court on cross-motions for summary judgment.

## APPLICABLE LAW

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

    1.    Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

1

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

7. Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

06-534 Southard

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion is based on objective medical findings. Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984). Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary. Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987). These have long been well-settled principles within the Circuit. Jones, 945 F.2d at 1370.

06-534 Southard

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain. Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms. 20 C.F.R. Section 404.1529 (1991). However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition. If there is, we then examine: (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment. The Sixth Circuit has held that such an impairment will not serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work. Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then

an award of benefits may, under certain circumstances, be had.  E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994).  One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a person capable of this level of activity must have the ability to do substantially all these activities.  20 C.F.R. 404.1567(b).  "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing.  20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants

. . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990).  If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid.  Ibid.  In such cases, the agency may be required to consult a vocational specialist.  Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985).  Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's physical and mental impairments.  Varley v. Secretary of Health and Human Services, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff's primary allegation of disability concerns heart problems.  (Tr. 380).  The ALJ found in connection with the most recent decision that Mrs. Southard had a "severe" combination of impairments due to congenital heart disease repaired at age 10, probable atrial septal defect (primium defect based on interpretation of EKGs by the medical expert witness), congestive heart failure, and chest pain described as both coronary artery disease and as atypical chest pain.

The ALJ elicited testimony from a Vocational Expert (VE) at the administrative hearing. The ALJ asked the VE whether a person of the plaintiff's age, education, and work experience could perform any jobs if she were limited to "medium" level exertion, and also had the following non-exertional impairments. She: (1) could not climb ladders; (2) could occasionally climb stairs, stoop, or crawl; (3) needed to avoid temperature extremes and exposure to dust, fumes, smoke, chemicals, or noxious gases; and (4) needed to avoid hazards. (Tr. 612). The VE responded that with these restrictions, the plaintiff would be able to perform her past work as an assembler, a nursing assistant, and a laundromat attendant. (Id.). She would also be able to perform the jobs if she were limited to "light" level exertion and the same non-exertional restrictions. (Id.).

On appeal, this court must determine whether the administrative decision is supported by substantial evidence.

The issue prompting the court's remand of the prior administrative decision concerned a functional capacity assessment completed by a treating cardiologist, apparently Dr. Ashwini Anand, which limited Mrs. Southard to less than full-time standing and sitting, in addition to numerous other limitations, based on a diagnosis of a Class III heart impairment (Tr. 176-81), which was diagnosed after an echocardiogram showed reduced systolic function and an ejection fraction of only 35 percent. (Tr. 191, 199). The court noted that a Class III heart impairment was

defined by the New York Heart Association as representing "marked limitation of physical activity; is comfortable at rest; ordinary physical activity results in fatigue, palpitation, dyspnea, or anginal pain." American Medical Association, Guides to the Evaluation of Permanent Impairment (5th Edition, 2001), p. 26.  The court did not agree with the ALJ's reasoning in refusing to accept the opinions of the plaintiff's examining doctors, and her decision to instead rely on the assessments of state agency reviewing sources, who had completed their review of the record before all of the evidence had been submitted.  The court noted that it was improper to reject the opinion of a treating source, such as Dr. Anand, in favor of non-examining sources who did not review the treating source's opinion and specifically give reasons for disagreeing with it.  Barker v. Shalala, 40 F.3d 789, 794 (6th Cir. 1994). The court concluded that, while the administrative decision was not supported by substantial evidence, an award of benefits was not indicated because of evidence from another treating source, Dr. Ramachandra, that Mrs. Southard's condition had at least subjectively improved, and there was additionally evidence that she continued to smoke against medical advice.

On remand, the plaintiff submitted additional evidence from her cardiologist and from her treating family physicians at the Community Outreach Clinic.  The evidence from the cardiologist seemed to indicate that the plaintiff was usually stable from a cardiac standpoint and doing well.  (E.g., Tr. 436, 442).  A cardiolite nuclear

06-534 Southard

stress test was obtained in July, 2004 and showed an old interior wall and anteroseptal myocardial infarction with minimal peri-infarctional reversibility and an estimated ejection fraction of 52.7 percent. (Tr. 570). Following the results, Dr. Ramachandra concluded that the plaintiff's congestive heart failure was stable and she could undergo gallbladder surgery at moderate risk. (Tr. 437). Subsequently, the plaintiff complained of worsening edema in the lower extremities, which was confirmed on examination, but a venous duplex Doppler study showed that arterial flow was good bilaterally, and on a followup visit in December, 2004 the plaintiff's examination showed no edema (Tr. 432-5, 456).

State agency physicians who reviewed the record at approximately this point concluded that the plaintiff would be restricted to "light" level exertion, with non-exertional restrictions consistent with the hypothetical question presented by the ALJ to the VE. (Tr. 474-91). Although the ALJ specified that the plaintiff would be capable of "medium" level exertion, the VE's testimony was that she could still perform her past relevant work if she were restricted to "light" level exertion. (Tr. 612).

The ALJ sought the opinion of a medical expert (ME) at the May 30, 2006 hearing. Dr. Lawrence Sommer, who identified himself as a cardiologist,[1] testified

---

[1] Dr. Sommer's qualifications showed that he listed his primary specialty as "cardiovascular disease," with a secondary specialty in internal medicine, and had been certified by the American Board of Internal Medicine. (Tr. 572). The qualifications note

10

that the plaintiff did not meet or equal one of the Commissioner's Listings of Impairment. (Tr. 595). In his opinion, the plaintiff had only mild limitations in her ability to carry weights, sit, and stand, and he would not disagree with some limitations in climbing and stooping, crawling, avoiding extreme temperatures and humidity, and avoiding hazards. (Tr. 596-7). Dr. Sommer opined that there was only one report in the record that placed serious restrictions on the plaintiff, and it was out of keeping with the rest of the evidence. (Tr. 598). He did not feel that the plaintiff's congenital heart disease and congestive heart failure along with chest pain would prevent her from performing average activities. (Tr. 599-601).

The ALJ accepted the opinion of the state agency reviewers as being consistent with Dr. Sommer's testimony and with the comments by the plaintiff's treating cardiologist that she was stable and appeared to be doing well from a cardiac standpoint. (Tr. 314-15). As previously noted, the ALJ's finding that the plaintiff was capable of "medium" level exertion is inconsistent with the conclusions of the state agency reviewers who limited her to "light" level exertion. (Tr. 474-91). In view of the fact that the VE testified that the plaintiff could still perform her past relevant work at the "light" level, any error in this regard was harmless.

---

that the primary specialty of cardiovascular disease was a "self-designated specialty which is not equivalent to nor does it imply ABMS [American Board of Medical Specialties] board certification or special training or competence." (Id.).

The plaintiff argues on appeal that it was improper to reject the opinion of the treating source, and notes that Dr. Sommer, the ME, did not have all of her medical records available, since some of these were submitted during the administrative hearing and could not have been reviewed by the ME, who was testifying from Florida, while still more medical records were submitted after the hearing. However, while the Commissioner's Hearings, Appeals, and Litigation Law manual (HALLEX) I-2-5-36 indicates that the best practice is to obtain interrogatories from an ME if new evidence is obtained during a hearing and it cannot be provided to the ME for review, the new evidence in this case does not provide a clear basis for assuming that the ME's testimony would have been different. The most significant piece of new evidence was a cardiac catheterization report from April, 2005 which showed severe single vessel coronary artery disease with distal collaterization. (Tr. 573-4). Office notes from the plaintiff's treating family physician, however, indicate that the results of this test had been interpreted by Mrs. Southard's cardiologist as representing one "small" blockage, and they had decided to continue to treat her with medications. (Tr. 579). Otherwise, the new evidence shows that the plaintiff was evaluated for left neck, shoulder, arm, and hand numbness, but an x-ray of the cervical spine showed no acute osseous abnormality although there was some degeneration at one level. (Tr. 544). The plaintiff was also briefly admitted to Manchester Memorial Hospital in May, 2006 complaining of chest pain and anxiety after her son passed away. (Tr.

500, 535). Her cardiologist was consulted, and determined that her coronary artery disease was stable and that she was having a "grief reaction." (Tr. 501). He allowed the plaintiff to be discharged home. (Id.).[2]

A reasonable finder of fact could have concluded that the improvement in the plaintiff's ejection fraction as shown in the new evidence would not have caused the ME to change his opinion. Therefore, under the particular circumstances of this case, substantial evidence supports the ALJ's reliance on the testimony of the ME and the state agency reviewers, even though they did not have every piece of evidence available for review.

The decision will be affirmed.

This the 17th day of October, 2007.

Signed By:

<u>G. Wix Unthank</u>

**United States Senior Judge**

---

[2] By the time the plaintiff arrived in her hospital room after being transferred from the emergency room, she was denying chest pain or shortness of breath and asked for permission to go downstairs to smoke with a friend. (Tr. 518). Her family physicians continued to list "tobacco abuse" as one of her problems. (E.g., Tr. 468).